**Ipcia M. KERCADO MELENDEZ, Plaintiff,**

v.

**Awilda APONTE ROQUE, Defendant.**

Civ. No. 85–2261 HL.

United States District Court,
D. Puerto Rico.

Aug. 12, 1986.

Héctor González López, San Juan, P.R., for plaintiff.

Carlos del Valle, Ramirez & Ramirez, Hato Rey, P.R., José Luis González, Ramirez & Ramirez, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Ipcia M. Kercadó Meléndez, a career employee for eighteen years with the Department of Public Instruction ("DPI"), filed this complaint against defendant, Awilda Aponte Roque, Secretary of DPI, under 42 U.S.C. § 1983 claiming she was discharged from the position of Superintendent of the Dorado School District in violation of the Fifth and Fourteenth Amendment Due Process clause and that the discharge was motivated by political discrimination in violation of the First Amendment.[1] As relief plaintiff seeks a permanent injunction reinstating her as Superintendent of the Dorado School District, restoring all her teaching certificates and compensating her with compensatory and punitive damages.

A five day bench trial of this case was held in March, 1986. Evidence was presented addressing plaintiff's claim that her termination violated both due process

---

1. Plaintiff also filed this action under 42 U.S.C. §§ 1985, 1986. The evidence presented at trial was not addressed to either of these statutes. Consequently, we make no ruling on this basis.

and the First Amendment. Based on the pleadings, the evidence presented at trial, and after considering the demeanor and credibility of the witnesses, the Court enters the following findings of facts and conclusions of law.

### PROCEDURAL HISTORY

After working as a DPI employee for eighteen years, plaintiff was terminated from the position of Superintendent of the Dorado School District for the first time on October 28, 1985. On that date plaintiff received a complaint signed by the defendant, the Secretary of DPI, ordering her dismissal, cancelling of all her certificates to teach in both public and private schools,[2] and charging her with seven infractions of the Teachers' Misconduct Act, Law 115 of June 30, 1965, 18 L.P.R.A. section 274 ("Law 115").[3] Plaintiff was also informed through the complaint of her right to appeal the Secretary's action within ten days to the DPI Board of Appeals.

Within ten days of receiving defendant's order plaintiff appealed the charges to the Board of Appeals. Plaintiff also filed the present action and petitioned this Court for a Temporary Restraining Order seeking to enjoin her dismissal. After filing the claim in this Court plaintiff withdrew her appeal before the Board of Appeals.

Plaintiff's petition for a TRO was based on the claim that she was separated from employment without a pre-termination hearing in violation of due process as required by *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Rather than granting a TRO, this Court set a "show cause" hearing for November 18, 1985, at which the parties were to come prepared to address the due process issue and plaintiff's right to a preliminary injunction on that basis.

On the very day set for the "show cause" hearing the charges against plaintiff were withdrawn and she was reinstated as Dorado Superintendent, thereby mooting the preliminary injunction sought as relief. On November 25, 1985 plaintiff was delivered a letter requesting her presence at an informal hearing on "new" charges against her. The hearing was held the next day, November 26, 1985, before Elba Rodríguez Fuentes, the Director of the DPI Legal Division and two other attorneys with the Department. Elba Rodríguez read plaintiff the charges against her and plaintiff was given the opportunity to respond. No evidence or witnesses were presented by either side.

On December 9, 1985 plaintiff was served for the second time with a complaint signed by defendant ordering her dismissal and cancelling her Superintendent's certificate. The complaint made four charges against plaintiff which, except for the condensed form, were identical to the seven charges made in the original October 28, 1985 complaint.

■ Plaintiff did not file an appeal of this order to the DPI Board of Appeals. Instead, she pursued the litigation of her rights in the present action. During the period between plaintiff's first discharge on October 28, 1985 and the second discharge on December 9 a trial date was set by this Court and discovery proceeded. While litigation was ongoing in this court defendant withdrew the first complaint against plaintiff and no administrative proceeding concerning plaintiff's dismissal was commenced before the DPI Appeals Board.[4]

---

**2.** Plaintiff holds teaching certificates to work as an Elementary teacher, Principal, General Supervisor and Superintendent of Schools.

**3.** The defendant's action dismissing plaintiff and cancelling her certificates was justified on the basis of the following provisions of Law 115, 18 L.P.R.A. 274:

. . . . .

(c) Negligence in the performance of the duties as a teacher.
(d) Insubordination ...
(g) Observance of improper behavior injurious to the good name of the Public Education.

**4.** Prior to trial defendant requested plaintiff's claim to be dismissed for failure to exhaust state remedies or in the alternative, that this Court abstain in favor of an administrative hearing

## FACTS

Plaintiff is an active member of the New Progressive Party ("NPP"). She has been a frequent attendant at NPP functions and speaks freely of her political party affiliation. Defendant, plaintiff's immediate supervisor and other DPI employees were well aware of plaintiff's political affiliation.

Defendant is a member of Popular Democratic Party ("PDP"). After eight years of NPP administration in Puerto Rico, the PDP regained power in the November, 1984 election. Following the transition to a PDP administration in January, 1985 the defendant, Awilda Aponte Roque, was appointed Secretary of DPI.

Plaintiff began to work for the DPI in 1967, after having completed a Bachelor's and Master's Degree in Education at Interamerican University in San Juan, Puerto Rico. Since being hired by DPI plaintiff has worked as an elementary teacher, principal of an elementary school, Deputy Director and Director of the Institute for Educational Services. In 1980 she was appointed Superintendent of the Dorado School District, a position she held until her termination in 1985. As Dorado Superintendent plaintiff was a "career" employee as defined by the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. sect. 1349. Under the law of Puerto Rico, a "career" employee with DPI, or any other Commonwealth agency, can be involuntarily terminated from employment only for "just cause." [5]

During her eighteen years of employment with DPI, plaintiff was never formally reprimanded for her job performance until October 28, 1985, when she received the first notice of dismissal. In fact, a witness for plaintiff, Regina Sevilla de Santiago, a 31 year veteran with DPI who served as plaintiff's supervisor for eight years including the years 1980–1984 while plaintiff was Dorado Superintendent, testified that plaintiff was very professional in her work and was highly dedicated to DPI

---

before the DPI Appeals Board. We denied defendant's request. Exhaustion of state remedies is not a prerequisite to bring a civil rights claim under 42 U.S.C. sect. 1983 in federal court. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

Furthermore, there was no reason for abstention since no administrative hearing was pending while litigation was proceeding in this Court. Though our denial of defendant's request for abstention was made prior to the recent Supreme Court opinion in *Ohio Civil Rights Commission v. Dayton Christian Schools,* —— U.S. ——, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the decision is distinguishable from the situation before us and would not alter our ruling. In support of our decision denying defendant's request we refer to the oft quoted language from *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705 (1972) [quoting *Ex Parte Virginia,* 10 Otto 339, 346, 100 U.S. 339, 346, 25 L.Ed. 676 (1880) ]: "[t]he very purpose of section 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial'."

**5.** The Puerto Rico Public Service Personnel Act, 3 L.P.R.A. sect. 1336(4), states:

(4) The appointing authorities may remove any career employee for good cause and upon previous preferment of charges, in writing, and upon prior holding of an administrative hearing, if the employee so requests.

Law 115, 18 L.P.R.A. sect. 274 states:

Procedure for cancellation of certificates—Causes

The Secretary of Education may permanently cancel the certificate of any teacher, or suspend such certificate for a definite period of time, through the procedure herein provided, for any of the following causes:

(a) Prevarication, bribery or immoral conduct.

(b) Incompetency in the discharge of his duties as a teacher.

(c) Negligence in the discharge of his duties as a teacher.

(d) Insubordination.

(e) Being convicted of a felony by any court.

(f) Incurrence of the conduct forbidden by sections 249–249e of this title.

(g) Disorderly or improper conduct, or such as is prejudicial to the good name of the public education system of Puerto Rico.

(h) Holding a certificate through fraud or deceit.

*See also Díaz González v. Tribunal Supremo,* 102 D.P.R. 195 (1974); *Pastor Lozada v. Director Ejecutivo,* 101 D.P.R. 923 (1973), interpreting the Personnel Act upon which the present Personnel Act of Puerto Rico is based.

and to her duties as Superintendent of the Dorado schools.

Seven charges were made against plaintiff when she was terminated for the first time on October 28, 1985. On December 9, 1985, when she was discharged for the second time, four charges were made. Other than the condensed format the four charges made in December are identical to the seven made in October. The charges against plaintiff to justify her dismissal state as follows:

1. You did not process the appointments of fourteen Teacher Assistants in the School District of Dorado thus disobeying the orders of the Director of the Bayamón Educational Region.

2. You kept Mrs. Clara Luna García working in your office during the month of August, 1985, without the authorization of the Regional Director nor that of the Secretary of Public Education, knowing that Mrs. Luna had been reinstated to her permanent position as a Mathematics Teacher.

3. You kept Mr. José W. Ramos Urbina working in your office without the authorization of the Regional Director nor that of the Secretary of Public Education, knowing that he had been reinstated to his permanent position as elementary school teacher, effective July 1st, 1985.

4. You altered the duties of Mr. Héctor J. López Maldonado, Assistant Superintendent, making it impossible for him to work normally in the position to which he was appointed, thus affecting the smooth functioning of the Dorado School District.

Defendant claims the first charge—that plaintiff failed to appoint the teachers' aides—was an act of insubordination in violation of Law 115. Plaintiff had received a letter dated October 4, 1985 from her supervisor, the Bayamón Regional Director, Leida Cintrón, with instructions to appoint the following persons selected by Ms.

Cintrón to serve as teachers' aides. Neither this letter nor a follow-up letter to plaintiff from Ms. Cintrón dated October 18, 1985—asking plaintiff for an update on the teachers' aides—gave plaintiff a time limit within which to process the appointments.

Prior to defendant's appointment as DPI Secretary teachers' aides were selected by plaintiff, as the Superintendent of the district with the aid of the Dorado school Principals. After defendant took office a new system was instituted. The fourteen teachers' aides to be appointed in the Dorado District were to be selected by a committee of Dorado School Principals, plaintiff—Dorado Superintendent, and María Córdova de Zayas—the Assistant Director of the Bayamón Region serving as the Regional Director's representative. In the case that no consensus was reached the aides were to be selected by Leida Cintrón, the Bayamón Regional Director.

On August 20, 1985 the committee met. Consensus was reached on only three people. As for the remaining ten appointments, for which there was no consensus, the Regional Director herself made the selection and sent plaintiff the letter dated October 4, 1985 with her decision.[6]

Plaintiff claims her failure to appoint the aides was not an act of insubordination. She testified that she did not receive the Regional Director's letter until October 11, 1985, that she was understaffed, and that the appointment process takes work to complete. Plaintiff claims she did not have sufficient time to make the appointments prior to her dismissal on October 28, 1985.

The second and third charges against plaintiff—that she kept Clara Luna García and José Ramos Urbina working in her office—are, according to defendant, acts of insubordination in violation of defendant's directives outlined in a May 20, 1985 memo to all DPI Superintendents and an Amendment to Circular Letter 20–84–85 issued July 19, 1985. The May 20, 1985 memoran-

---

**6.** The evidence indicates that no consensus was reached in part because the Regional Director's representative, María Córdova, refused to accept the committee's recommendations. The evidence further indicates that both Ms. Cintrón and Ms. Córdova are affiliated with the PDP.

dum stated that DPI had a problem of a large number of teaching personnel working in positions other than those to which they were appointed. To correct the situation the memo ordered all employees, effective July, 1985, to be located in the work unit to which they were assigned. The July 19, 1985 memorandum amending Circular Letter 20–84–85 established the proper procedure for reassigning teachers from their appointed positions. The amendment provides that reassignments are allowable on petition of the employee or when services of an employee are necessary for, among other reasons, a "special situation" in the school district.[7]

Plaintiff denies that the temporary use of Clara Luna and José Ramos was an act of insubordination. Prior to defendant's appointment it was accepted practice to borrow the services of a teacher when the Superintendent's office was short of staff. Plaintiff testified that she assumed that the shortage of employees in her office constituted a "special situation" within the meaning of the July 19, 1985 amendment to the Circular Letter and, therefore, the temporary reassignment of Clara Luna García and José Ramos was proper.

It is undisputed that plaintiff's office was shorthanded at that time. On July 2, 1985 plaintiff sent a letter to the Governor, with a copy to the defendant, explaining her problem of staff shortages and listing 14 positions which remained unfilled.[8]

Plaintiff stated in the letter that she had notified the proper people of this problem without success and, she added, that she hoped there was no "persecution" involved in creating this situation.

In the case of both Clara Luna and José Ramos plaintiff asked permission of the Principals of the schools where they were assigned to use them temporarily. Clara Luna was assigned to the José Alegría Elementary School as a Mathematics teacher and was to report there at the beginning of August. Instead, plaintiff asked her principal, Hernán Burgos, if Ms. Luna could work in the Superintendent's office from August 5 to August 30, the busiest month for the Superintendent.[9] Clara Luna returned to her teaching position the first week of September. In the case of José Ramos, he was originally assigned to the Luis Muñoz Rivera School, however, on August 30, 1985 plaintiff received a letter from the principal of that school explaining that his position was in excess and that he would be returned to the office of the Superintendent. On September 5, 1985 Ramos was reassigned to the Pedro López Canino School and on September 11, 1985, plaintiff wrote a letter to the principal there, Marie Carvajal, asking permission to use Ramos in her office until new staff was appointed to her office.

Plaintiff denies the validity of the fourth charge—that she altered the duties of

---

**7.** The pertinent portion of the July 19, 1985 memo states:

> According to the rules and regulations for teacher appointments, the School Superintendent may reassign in his/her school district the personnel with teaching and student service duties, and special teachers in the same category, upon request of the employee or for service needs ...
>
> Service needs shall be understood as:
>
> . . . . . .
>
> d. taking care of special situations that may arise in a school or school district.

**8.** According to the July 2, 1985 letter to the Governor, the following positions were vacant:

1. Assistant Superintendent
2. Asst. Superintendent (supposedly)
3. Asst. Superintendent Chapter I
4. Sup. Special Educational Zone
5. Supervisor Spanish Zone

6. Supervisor Mathematics Zone
7. Director Maguayo Elem. School
8. Director José de Diego School
9. Director Pre-vocational Center
10. Custodians
11. Sec.—Clerk Typist II
12. Executive Official
13. Sec.—Clerk Typist
14. Clerk

**9.** There is a discrepancy in the evidence as to when plaintiff communicated to Mr. Burgos in writing requesting the use of Clara Luna. Plaintiff presented a letter dated earlier August, while defendant presented a similar letter dated early September. Whenever the written request was sent the evidence is clear that plaintiff had spoken to Mr. Burgos in early August about using Clara Luna temporarily.

Héctor López Maldonado, the newly appointed Assistant Superintendent. She claims that Héctor López was given his proper assignments but refused to cooperate and caused problems with the staff in her office and at schools in the district.

Héctor López and Evaristo Rosado Colón were appointed plaintiff's Assistant Superintendents in early September and began work on or near September 19, 1985. Plaintiff was not pleased with Héctor López' appointment as her assistant. Plaintiff and López had known each other for years and the record is unequivocal that there was no love lost between them.

Assistant Superintendents of the Dorado School District were to be appointed by a committee of plaintiff—the Dorado Superintendent, María de Córdova—the Assistant Regional Director, and Héctor J. Torres—a representative from the DPI central office. The committee interviewed candidates and voted on their preferences. A consensus was reached on at least two candidates; Héctor López was not one. Despite the fact that unanimous support existed for two candidates and there was no such support for Héctor López, Héctor López was appointed Assistant Superintendent by the defendant.

The evidence in the case is rife with incidents documenting the tumultuous relationship between plaintiff and López both before and after his appointment.[10] Plaintiff also presented letters and testimony evidencing that several other people on her staff and at the other schools had problems working with López and found his conduct offensive.

Of particular note to this case is an incident which occurred prior to López' appointment while he was working under plaintiff as Director of the Work and Study Center in the Dorado District. In January, 1985 plaintiff wrote to the defendant requesting a meeting with her and López to discuss the problems at the Center. Plaintiff testified that the Secretary accused her during the meeting of causing the problems at the Center by politically persecuting López. López is a well known PDP member. In 1980 he was a candidate for Mayor of Dorado. Defendant and López deny that defendant made such an accusation at the meeting.

On March 19, 1985 plaintiff wrote the Governor about the meeting with the defendant and López at the Work and Study Center and about another meeting with the defendant and teachers and employees of the Bayamón region. In this letter plaintiff accused the defendant of not knowing "anything about the functioning of a school district and to top it off she [the defendant] passes judgment and makes decisions without investigation and dialogue." The defendant responded to the letter cordially without addressing plaintiff's accusations. This letter was never cited in the charges against plaintiff or the testimony as a reason for plaintiff's dismissal.

It is also noteworthy that plaintiff filed a form 409 against Héctor López on August 12, 1985 when he failed to report to his assigned position for over a week. Plaintiff explained that the filing of a 409 form was an automatic procedure used to inform the administration of a teacher's failure to report to work. This form was returned to plaintiff by the Director of the Legal Division requesting the submission of three pieces of written evidence that plaintiff had communicated with López prior to taking the action. The Legal Division took no further action. On August 14, 1985 Antonio Adrover wrote plaintiff explaining that the defendant had ordered the matter dropped "without effect."

As explained by the Director of the Legal Division the general procedure for terminating a DPI employee is to assign an investigator from the Legal Division's Complaint Department to investigate the employee's conduct. The investigation

---

10. The record is clear that plaintiff and López had an antagonistic relationship. At one point in October 1985 the two entered into a heated verbal battle calling each other obscene names. Following the incident López filed criminal charges against plaintiff for breach of the peace. No probable cause was found for the charge.

may be triggered by a complaint filed by a parent, child, fellow teacher or supervisor. The findings of the investigation are then submitted to the defendant, Secretary of DPI, who decides, with recommendations from the attorneys at the Legal Division, what action should be taken in accordance with Puerto Rico's Law 115.

Once the Secretary decides that discharge is the proper action, the employee is served with a complaint notifying him or her of the termination, the charges, and the right to appeal. If the case is appealed to the DPI Board of Appeals, an attorney from the DPI Legal Division serves as prosecutor in the case.

In plaintiff's case no comprehensive investigation of her conduct was undertaken prior to her first discharge on October 28, 1985. The charges that she kept Clara Luna and José Ramos working in her office when they were assigned elsewhere were supported by findings made by investigators with the DPI Legal Division in the course of investigating a complaint about grades made by parents of children at the José Alegría School. As for the charge concerning Héctor López, Antonio Adrover Robles, a special aide to the defendant, submitted the complaint to the Director of the DPI Legal Division. The Legal Division never investigated this charge. The Director of the Legal Division testified that all credibility findings for the charge were based on conversations she had with Adrover and on a statement made by López to Adrover. Neither plaintiff nor any other employee in her office was questioned about this charge prior to her termination in October, 1985. Concerning the charge that plaintiff failed to process the teachers' aides, the Legal Division Director must have obtained this information through conversations with Leida Cintrón, the Bayamón Regional Director. The Director never spoke with plaintiff about the matter prior to her termination.

Following plaintiff's reinstatement on November 18, 1985 the Legal Division did some further investigation. Statements were taken from several sources to establish that Clara Luna and José Ramos were actually in plaintiff's office and to confirm that tension existed between Héctor López and the plaintiff. No statement was ever taken from Clara Luna, José Ramos, the Principals of the schools where they were assigned, or from the plaintiff. This investigation was completed in hand written form on December 9, 1985. On that same day plaintiff was served with the second order of termination signed by the defendant.

## FIRST AMENDMENT VIOLATION

The First Amendment protects a government employee from being discharged because of his or her political beliefs or party membership, unless political affiliation is an appropriate requirement for the job. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).[11]

█ *Branti* and *Elrod* both presented situations where political affiliation was the sole basis for the dismissal. In such cases where politics is the sole motive for dismissing the plaintiff the courts must apply a strict scrutiny analysis to determine whether the Constitution was violated. *See Wren v. Jones,* 635 F.2d 1277 (7th Cir.1980); *Farkas v. Thornburgh,* 493 F.Supp. 1168 (E.D.Penn.1980). However, in situations, such as the case at bar, where the evidence demonstrates that political affiliation was not the sole motivating factor, but, rather, the dismissal was based on a "mixed motive" of both legitimate and illegitimate motives, the burden of proof is dictated by *Mt. Healthy City School District Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The application of the *Mt. Healthy* standard has

11. Defendant admits that political affiliation was not an appropriate requirement for plaintiff "career" position as Superintendent of the Dorado Schools. No claim was ever presented to this Court that plaintiff's dismissal was justified because in her position she was unprotected by the First Amendment.

been held appropriate in cases where plaintiff claims to have been discharged because of his or her political affiliation and mixed motives are alleged. *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984); *Barnes v. Bosley,* 745 F.2d 501 (8th Cir.1984); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981); *Wren v. Jones, supra; Tanner v. McCall,* 625 F.2d 1183 (5th Cir.1980); *Rosaly v. Ignacio,* 593 F.2d 145 (1st Cir.1979); *Brule v. Southworth,* 611 F.2d 406 (1st Cir. 1979).[12]

■ Under the *Mt. Healthy* standard the burden is initially on the plaintiff to show that his or her conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the action taken against him or her. *Id.* 429 U.S. at 287, 97 S.Ct. at 576; *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979). If this is proven, the burden shifts to defendant to show by a preponderance of the evidence that the plaintiff would have been discharged in any event. *Id.* As the Court explained in *Givhan, supra,* if plaintiff is to recover after meeting his or her initial burden, the trier of fact must expressly find that plaintiff would not have been discharged "but for" the constitutionally protected conduct. *Id.* at 417, 99 S.Ct. at 697.

■ The protected conduct in the present case is plaintiff's membership in the NPP political party. Plaintiff's initial burden was to prove that her political affiliation was a substantial and motivating factor for her dismissal. Because of its subjective nature, motivation of a defendant can rarely be proved with direct evidence—seldom will an employer admit to have violated the Constitution. For this reason circumstantial evidence may be used to show discriminatory motive in a patronage dismissal case. *Gabriel v. Benitez,* 390 F.Supp. 988, 993 (D.P.R.1975),

aff'd. *Rivera Morales v. Benitez De Rexach,* 541 F.2d 882 (1st Cir.1976). We find that the circumstances surrounding plaintiff's dismissal supports her burden of proving political affiliation was a motivating factor for defendant's action.

Plaintiff is a member of the NPP while defendant is a member of the PDP. The Court takes note that in the highly charged political climate in Puerto Rico this fact has added significance. *See, e.g., Colon v. Cruv,* 84 JTS 52 (P.R.1984); *Rosario Nevarez v. Torres Gaztambide,* 633 F.Supp. 287 (P.R.1986) (citing large number of political discrimination cases filed in the federal court this year alone).

Furthermore, the manner in which defendant handled plaintiff's dismissal indicates that defendant was bent on her discharge. Though one of the functions of the DPI Legal Division, as explained by its Director, is to investigate complaints against an employee to determine whether the complaint has merit, in this case it appears the Legal Division and the defendant were less interested in assessing whether the charges against plaintiff had merit and more interested in building a case to support her dismissal.

Despite the fact that plaintiff was an exemplary DPI employee for 18 years and the Dorado Superintendent for five years, defendant made no comprehensive investigation of plaintiff's conduct prior to her first dismissal on October 28, 1985. The charge that plaintiff failed to assign duties to Héctor López was solely based on a complaint and statements made by López, a well known PDP member, to Antonio Adrover, a special aide to the defendant. The Director of the Legal Division relied on this information from Antonio Adrover to make all credibility findings. Plaintiff was never asked her view of the problem with Héctor López and the DPI Legal Division did no other investigation of the situation.

---

12. We note that defendant made no claim that the action against plaintiff was in response to the March 19 and July 2, 1985 letters plaintiff wrote to the Governor of Puerto Rico. Therefore, we do not consider the facts of this case in

light of the balancing test required by *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

The charges against plaintiff for keeping Clara Luna and José Ramos in her office were based on otherwise unnoticeable findings made in the course of a much larger investigation of a completely different subject. The investigation report shows that plaintiff explained to the investigator why Clara Luna and José Ramos were working in her office, and that she had received permission from their Principals. Defendant must have rejected this explanation, yet, at no time prior to her dismissal was plaintiff reprimanded for or notified of wrongdoing.

Plaintiff's failure to process the appointment of teachers' aides must have been based on information obtained by the Director of the Legal Division in the course of conversations with plaintiff's supervisor, the Director of the Bayamón Region. Again, plaintiff was never given the opportunity to respond to this charge prior to being dismissed.

It was only after plaintiff filed suit in this Court and was reinstated as Superintendent that the DPI Legal Division undertook a more comprehensive investigation. However, even this investigation is decisively one-sided. Statements were taken from select individuals only and for the limited purpose of establishing that Clara Luna and José Ramos worked in the plaintiff's office in August and September, 1985, and that plaintiff and Héctor López had a less than friendly relationship. No statement was ever taken from plaintiff, nor from Clara Luna, José Ramos, the Principals of the schools where they were assigned, or from other employees in plaintiff's office who also had a negative relationship with Héctor López.

On December 9, 1985, the very same day that the DPI Legal Division investigator finished her report, and even before the report had been typed, plaintiff was served with her second notice of termination. It is hard to believe that the attorneys at the DPI Legal Division, much less the defendant, had time to review this report before terminating plaintiff.

It also bears weight as an indication that defendant had political motives for terminating plaintiff that no investigation was made of complaints against Héctor López, a PDP member. In particular is the 409 form filed by plaintiff notifying the administration that López had failed to report to his assigned position. The defendant ordered this action dropped without follow-up or investigation.[13]

In addition, the defendant's appointment of Héctor López as Dorado Assistant Superintendent is significant evidence that the defendant does make decisions on the basis of political affiliation. Héctor López was appointed despite the fact that there was consensus among the committee members to appoint two other candidates (and no consensus for López), and that it was well known that plaintiff and López had an antagonistic relationship. When asked why she had appointed López despite knowing the facts of the situation, the defendant gave the following unconvincing response:

[Héctor López] had the right to be appointed. Education is a process of change and supervisors have to change and if we want the children to behave and to be considerate, we have to begin to do it by counselors. So I think it was a wonderful opportunity to put professionals together.

The evidence in the record is sufficient to infer that political affiliation was a substantial factor in defendant's motive to terminate her.

■ The burden shifts to defendant at this point to demonstrate that plaintiff would have been dismissed despite her par-

---

13. Plaintiff also presented letters signed by several teachers working with Héctor López at the Rio Lajas School, where Mr. López was assigned prior to being appointed Assistant Superintendent. The letters complained about López' lack of professional work habits, and his condescending and uncooperative conduct. Although there is no evidence that this complaint was ever sent to the complaint department of the Legal Division, it is clear from the investigating procedures followed in this case that if the Legal Division had been interested in investigating López they would have discovered the complaint and made a follow-up.

ty affiliation for valid reasons. The applicable test is whether "but for" political discrimination plaintiff would not have been discharged. We find that defendant has failed to meet her burden.

We begin with the fact that plaintiff has been a DPI employee for eighteen years and Dorado Superintendent for five years. Until her dismissal on October 28, 1985, she had never been formally reprimanded for her job performance. In fact, plaintiff was steadily rewarded for her work with job promotions. Even when the charges against plaintiff are taken on their face without considering their merit they do not rise to such a level of seriousness to warrant the *discharge* of an employee of plaintiff's caliber who had been with the DPI for eighteen years. And when the merits are considered it becomes apparent that there is little support for defendant's claim that plaintiff's conduct was insubordinate requiring the termination of her employment with DPI.

Concerning the first charge—that plaintiff failed to process the appointment of the teachers' aides—defendant claims this was an act of insubordination in refusing to carry out the directive of the Bayamón Regional Director, Leida Cintrón. According to defendant plaintiff should have realized the urgency of the situation and made the appointments within "three days." We fail to see how defendant could honestly believe that plaintiff should have realized the urgency of the situation and processed the aides immediately when it took the Bayamón Regional Director, herself, over six weeks to make the selection—from August 20, 1985 when the committee to select the aides met and no consensus was reached, until October 4 when she sent plaintiff a letter with her choices for the appointments. Plaintiff claims she received the letter October 11, 1985 and she was dismissed October 28, 1985. This left her less than three weeks to process the appointments. Given the fact that the Regional Director never gave plaintiff a time limit to make the appointments and she never reprimanded plaintiff for tardiness, and given the situation in plaintiff's of-fice—that she was shorthanded and it was the beginning of a school year—all facts of which defendant was aware, we cannot find that defendant was sincere in believing plaintiff's conduct was a purposeful refusal to follow the directives of her supervisor or an overt act of insubordination worthy of dismissal.

Defendant charges that plaintiff's decision to keep Clara Luna and José Ramos working in her office was an act of insubordination in defiance of the defendant's May 20, 1985 memo to all Superintendents and the June 29, 1985 memo setting forth the procedure for reassigning DPI personnel. As plaintiff interprets the June 29 amendment, she was authorized to use temporarily the services of Clara Luna and José Ramos. The amendment allows for personnel reassignment when "special circumstances" exist in the district. Plaintiff believed the shortage of personnel in her office to constitute such a "special circumstance." With the permission of the school Principals Clara Luna and José Ramos worked in her office for a short time and then returned to their assignments. There is no evidence that plaintiff's temporary use of Clara Luna or José Ramos caused any disruption in the schools where they worked.

We find plaintiff's interpretation of the July 29, 1985 amendment to be logical and valid. Certainly it would have been more proper for plaintiff to seek authorization for her action from her supervisor as well as the school Principals, however, the July amendment does not call for such authorization. Again we find a lack of evidence to indicate a purposeful act of insubordination by plaintiff which would warrant a dismissal.

Defendant's charge that plaintiff refused to give Héctor López his proper assignments is the weakest of all the charges against her. The tension which existed between plaintiff and López was well known to defendant and many other DPI employees in the Dorado district. If pressed on this issue, the Court would find

this charge to favor plaintiff's case over defendant's. It is not an unfounded conclusion that the Secretary, knowing the antagonism between plaintiff and López, appointed López as Assistant Superintendent in order to harass the plaintiff.

We conclude that defendant violated the First Amendment when she discharged plaintiff as Superintendent of the Dorado Schools. Plaintiff's affiliation with the NPP political party was a motivating factor for her discharge and, if it were not for plaintiff's political party affiliation, she would not have been dismissed by defendant.

## DUE PROCESS

The Due Process Clause of the Constitution guarantees a public employee with a property interest in continued employment the right to an informal hearing *prior* to being discharged. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In the Court's view, the protection of a pretermination hearing is required by the Due Process Clause because the private interest of an individual in retaining employment outweighs the government's interest in expeditious removal of an employee and the avoidance of administrative burdens. *Id.*, 105 S.Ct. at 1494. As the Court stated:

> [T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. (Cites omitted.) While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job. (Cite omitted.)

The Due Process Clause guarantees a public employee with a property interest in continued employment the right to notice and an opportunity to respond to the charges at an informal hearing. The type of hearing required is described as "some-thing less than a full evidentiary hearing" enough to make an "initial check against mistaken decisions." *Id.*, at 1495.

In the case before us plaintiff had a property interest in continued employment as Dorado Superintendent. Puerto Rico's Personnel Act, 3 L.P.R.A. 1349, and Law 115 establish that a "career" employee may be terminated only for "just cause." [14] On October 28, 1985 she was discharged as Superintendent without notice of the charges against her or an opportunity to respond. Not only was plaintiff left on October 28, 1985 without employment or salary, and was left with the stigma of having been fired from her job with charges against her, but defendant also cancelled all of plaintiff's certificates to teach in both public and private schools leaving her without the ability to seek work in the profession she had practiced for the past eighteen years.

After filing this claim against defendant for a due process and First Amendment violation, plaintiff was reinstated as Dorado Superintendent. She was then given an informal hearing before the Director of the DPI Legal Division and two weeks later was discharged for the second time, this time with a cancellation of only her Superintendent Certificate. Despite this apparent attempt to correct a due process violation, defendant does not concede that plaintiff's due process rights were violated when she was terminated for the first time without a hearing.

Defendant argues that the procedures for discharge required by Law 115 entitling the employee to an expedited decision on appeal—within ninety days—and to full back-pay if the Appeals Board decision is favorable, are in compliance with the due process required by *Loudermill*. This, precisely, is the argument rejected by *Loudermill*. There, the Supreme Court held that while the State Legislature may confer a property interest on a public employee, it may not constitutionally define the depriva-

14. Similar state laws have been interpreted to create a property interest worthy of due process protection. *See Loudermill, supra,* 105 S.Ct. at 1491.

tion of the interest. *Id.*, at 1493. Once it is determined a property interest exists according to state law and the due process clause applies, what process is due is determined by the Constitution, not state law. *Id.*

*Loudermill* held that the Due Process Clause requires a pre-termination hearing before dismissing a public employee, like plaintiff herein, with a property interest in his or her employment. Defendant violated plaintiff's due process rights when she discharged plaintiff on October 28, 1985 without giving plaintiff an informal hearing.

## RELIEF

 Defendant in this case is not entitled to a qualified immunity excepting her from liability for damages. It follows, as a matter of course, that plaintiff is entitled to all relief, for which there is proof, available to a prevailing plaintiff in a section 1983 action. Under the proper circumstances a prevailing plaintiff may be awarded injunctive relief in the form of reinstatement to the position previously held. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). As damages, prevailing plaintiff is allowed compensatory damages, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Fernandez v. Chardon,* 681 F.2d 42, 60 (1st Cir.1982), including damages for emotional distress, *Carey v. Piphus,* 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978). Plaintiff is also entitled to punitive damages when defendant's conduct involves a callous indifference to plaintiff's federally protected rights or when defendant's conduct is motivated by malicious intent, or evil motive. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1982); *Irizarry v. Quiros,* 722 F.2d 869 (1st Cir.1983).

As compensatory damages plaintiff is awarded $12,074.50 in back wages. She was dismissed from the position of Superintendent of Dorado on October 28, 1985, nine and a half months ago. Prior to her dismissal she was paid a salary of $1,271.00 per month.

Plaintiff is further awarded $15,000.00 as actual damages for emotional and mental distress. Plaintiff's abrupt discharge from the position as Dorado Superintendent caused her humiliation, stress and anxiety. Plaintiff cried on several occasions during the trial when she was questioned about her discharge on October 28, 1985. Plaintiff tried to seek work elsewhere but was unsuccessful. She testified that the process was extremely painful; that it was difficult for her to maintain composure when she was asked the inevitable question about her past work. Plaintiff no longer goes into the town of Dorado because she is too humiliated and ashamed to face the people she knows and worked with when she held the important position of Dorado Superintendent. Plaintiff is married and the mother of five sons. The family relies on her income for their financial well-being. Plaintiff testified that her dismissal affected her and her family emotionally, socially and financially.

Plaintiff is also awarded $10,000.00 in punitive damages. The evidence indicates that defendant was callously indifferent to plaintiff's federally protected rights and was intent on terminating plaintiff's employment as Superintendent because she was a member of the opposing political party. Though plaintiff was a stellar DPI employee for eighteen years she was terminated for the first time on October 28, 1985 without ever being reprimanded for her conduct, without being notified of the charges, and without being given an opportunity to respond.

## CONCLUSION

### A. DAMAGES

Plaintiff Ipcia Kercadó Meléndez is entitled to recover from defendant Awilda Aponte Roque the amount of $12,074.50 for loss of wages and $15,000.00 for actual damages for emotional and mental distress.

Punitive damages are also assessed against defendant in the amount of $10,-

000.00 because of her callous disregard for plaintiff's First Amendment rights and to deter political discrimination.

### B. INJUNCTIVE RELIEF

Equitable relief is a component of a Section 1983 action. Plaintiff has established that injunctive relief is just and proper in this case. Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that defendant, her successor in office, agents, attorneys, employees, and any other person acting on behalf or in concert with defendant, reinstate plaintiff forthwith to her former position of Superintendent of the Dorado Schools, at the same salary and with the same fringe benefits she would be earning and receiving, but for her termination, and with the same functions and authority pertaining to her position.

### C. ATTORNEYS FEES

As a prevailing party, plaintiff is entitled to attorneys fees pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. 1988. The overriding purposes of the Act is the encouragement of private enforcement of the civil rights laws to fully vindicate federal constitutional guarantees. Accordingly, plaintiff is to submit a verified fee application within fifteen days. *See Grandel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984).

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.