**Maria ROJAS, et al., Plaintiffs,**

v.

**Awilda APONTE–ROQUE, et al., Defendants.**

**No. CIVIL 86–0671 (PG).**

United States District Court, Judicial D. Puerto Rico.

Dec. 11, 1987.

Pedro Miranda Corrada, San Juan, P.R., for plaintiffs.

Esteban Nunez Hoyos, Federal Litigation Div., U.S. Dept. of Justice, Com. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The matter is before this Court on defendants' motion for summary judgment filed on June 8, 1987. On August 4, 1987, plaintiffs filed a motion for extension of time to reply to defendants' motion for summary judgment by August 18, 1987. Said request for extension of time is unduly late, therefore, it is hereby denied.

This is a civil rights action brought, among other things, under the Civil Rights Act of 1871, 42 U.S.C. § 1983, in which plaintiffs allege that defendants deprived them under color of state law of their rights under the First and Fourteenth Amendments to the Constitution of the United States.[1] Plaintiffs allege that they were separated from their positions as Executive Directors of the Department of Education of the Commonwealth of Puerto Rico because of their political affiliation with the New Progressive Party (hereinafter NPP). Plaintiffs are claiming damages and reinstatement in their positions as Executive Directors.

In support of their motion for summary judgment, defendants raise various arguments, to wit: 1) that plaintiffs did not have a property interest in continued employment and, therefore, were not entitled to due process of law; 2) that defendants did not violate any substantive rights of plaintiffs upon their exercising legal authority and discretion to refrain from giving plaintiffs new employment contracts; 3) plaintiffs' positions as Executive Directors were illegal; and 4) defendants are entitled to qualified immunity from suit for damages in their personal capacity because their actions were taken according to law, in good faith and did not violate clearly established statutory or constitutional rights which a reasonable person would have known.

It is our duty to grant defendants' request for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with

---

1. Plaintiffs also bring their action under Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico. Section 1 of the Civil Righs Act of 1871, 17 Stat. 13, as amended; Public Service Personnel Act, 3 L.P.R.A. §§ 1301, et seq., and 18 L.P.R.A. § 249e.

the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## Findings of Fact

1. All plaintiffs held the transitory positions of Executive Directors at the Department of Public Education. Pursuant to the terms and conditions of their employment contract, plaintiffs were appointed to a contractually fixed term expiring on July 31, 1985.

2. All of the plaintiffs are members of the NPP, the political party whose candidate for the governorship lost the general elections of November 6, 1984. All of the defendants are members of the Popular Democratic Party, the political party whose candidate, Rafael Hernández Colón, was elected Governor of the Commonwealth of Puerto Rico in the general elections held on November 6, 1984.

3. Through opinion letters dated March 15, 1985 and July 2, 1985, the Secretary of Justice of the Commonwealth of Puerto Rico concluded that the creation and afterward extension of the transitory positions of Executive Directors I were made in violation of the norms of creation, classification and compensation of the classes of positions provided by the Public Service Personnel Act, 3 L.P.R.A. § 1301, *et seq.*, its Regulations and Personnel norms; the Budget Act, 23 L.P.R.A. § 81, *et seq.;* and the Uniform Compensation Act, 3 L.P.R.A. 760, *et seq.* Moreover, the Secretary of Justice was of the opinion that according to law the Secretary of Public Education had the power to abolish the positions of Executive Directors and/or School Managers.

4. According to defendants, defendant Awilda Aponte Roque, Secretary of Public Education, relied on the opinion letters of the Secretary of Justice and decided to eliminate the positions of Executive Directors or School Managers. As a result, the transitory appointments held by plaintiffs whose contracts expired were not renewed, except for plaintiff Margarita López Feliciano, whose contract was terminated one month before it expired.

5. The position of School Manager was created for experimental districts on July 31, 1978, by the then Secretary of Public Education. Said position was created as a transitory position of fixed duration with a classification of Executive Director I. As of that date, there was no classification plan nor a compensation plan for the teaching personnel of the Department of Public Education (hereinafter DPE), as required by the Central Office of Personnel Administration (hereinafter COPA). Furthermore, when these transitory positions were created no approval from the Budget Bureau was requested.

On August 14, 1980, through Circular Letter number 7-80-81, the Secretary of Public Education extended the creation of the fixed-term positions of School Managers (Executive Directors I) to all school districts. A total of eighty-four persons were appointed to the transitory positions of School Managers. All of them were permanent employees for the teaching section of the DPE as of the date of their appointments as School Managers.

In fiscal year 1981 the Budget Bureau created permanent positions of School Managers. However, the school manager position was never approved by COPA.

## Conclusions of Law

In their motion for summary judgment defendants argue that plaintiffs did not have a property interest in continued employment and therefore were not entitled to due process of law. Defendants are correct.

The Due Process Clause of the Fourteenth Amendment requires some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1983). A property interest is created by existing rules or understandings that stem from an independent source such as "state law". *Id.* 105 S.Ct. at 1491, *citing,*

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In their complaint, plaintiffs allege that they had an expectancy of continued employment in their positions even though they held transitory positions. They do not describe, however, any promises or representations made that might give rise to a property interest in their employment beyond the expiration date of their appointment. Thus, plaintiffs have alleged only a mere subjective expectancy that their employment would continue indefinitely and as a result plaintiffs have no property interest in their employment. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1983); *Cheveras Pacheco v. Rivera González,* 809 F.2d 125 (1st Cir.1987). Therefore, under *Perry v. Sindermann,* these employees have no procedural due process rights.[2]

In their motion for summary judgment defendants also argue that plaintiffs' positions as Executive Directors were illegal and thus null and void.

We agree. The creation and afterward extension of the transitory positions of Executive Directors I were illegal since they were made in violation of the norms, classification and compensation provided by the Public Service Personnel Act, *supra;* the Budget Act, *supra;* and the Uniform Compensation Act. As a result, these actions were null and void. *See, Liliana Laboy v. ELA,* 115 D.P.R. 190 (1984); *Colón v. Alcalde Municipio Ceiba,* 112 D.P.R. 748 (1982).

The classification of positions is one of the essential areas of the merit principle embodied in the Public Service Personnel Act, 3 L.P.R.A. § 1331. Section 4.2 of said Act, 3 L.P.R.A. § 1332(7), binds the appointing authority in the case of individual administrators[3] to establish and maintain classification and compensation plans. However, the structuring of functions as well as the determination of the relative hierarchy between the different classes and the assignment of the compensation requires the approval of the COPA director. 3 L.P.R.A. § 1332(9) and (10). In the present case, when the first transitory positions were created in July 1978, no approval from COPA was requested in order to set their classification or their compensation.

Likewise, former Budget Act, Act No. 213 of May 12, 1942, as amended, 23 L.P.R.A. § 81, *et seq.,* required in its article 30, subparagraph (c), that no additional positions could be created without written consent from the Director of the Budget Bureau. Likewise, when the first transitory positions were created in July 1978, no approval from the Budget Bureau was requested.

In July 12, 1979, the Uniform Compensation Act of 1979 came into effect, 3 L.P.R.A. § 760d. It established the obligation of the individual administrators to create separate compensation plans for its career and confidential employees with the approval of the Director of Personnel after consulting with the Director of the Bureau of the Budget. Article 9 of that Act, 3 L.P.R.A. § 760h, also required the individual administrators to assign at the beginning of each fiscal year all the classes of positions to the schedules contained in the compensation plan. The creation of the additional transitory positions in 1980, as well as the approval by the Budget Bureau of the regular positions in 1981, violated these provisions as well as the provisions on classification of positions of the Personnel Act, 3 L.P.R.A. § 1332.

---

**2.** Our conclusion is no different with respect to plaintiff Margarita López Feliciano, whose contract was terminated one month before it expired, for it is well known that transitory contracts have clauses that indicate that they could be terminated at any time. *See,* 3 L.P.R.A. § 1336(9) (Supp. 85).

**3.** Section 1343 of 3 L.P.R.A. provides:

The following agencies shall be Individual Administrators:
All agencies which are at present in the exempt or noncompetitive service. The following shall likewise be Individual Administrators:
(1) * * *
(5) Teaching personnel of the Department of Education....

Although plaintiffs were denied the requested extension of time to reply to defendants' motion for summary judgment and, therefore, it stands unopposed, we would only grant defendants' request for summary judgment if appropriate. Fed.R. Civ.P. 56(e); *Tunnell v. Wiley*, 514 F.2d 971 (3rd Cir.1975); *McDermott v. Lehman*, 594 F.Supp. 1315, 1320 (D.Me.1984); 10 A. Wright, Miller, Kane, *Federal Practice and Procedure:* Civil § 2739 (1983). In their complaint, plaintiffs allege that their contracts were not renewed because of their political affiliation with the NPP. In a similar case, *Kauffman v. Puerto Rico*, 87 D.C.O. 024 (January 23, 1987), the Court used a "but for" analysis even though the employees in that case were illegaly hired. In *Kauffman*, plaintiffs were recruited from outside the Puerto Rico Telephone Company (hereinafter PRTC) without giving internal employees first consideration for the job vacancies and without even publishing the job openings, either internally or externally, in violation of the PRTC's personnel regulations. In using the "but for" analysis, the Court in *Kauffman*, stated:

> Though plaintiffs are not entitled to the due process protection generally afforded career employees, they do have a right, as do all employees, to be free from employment termination for an unconstitutional reason, such as political discrimination. Plaintiffs claim the real reason for their dismissal is their political affiliation was not a consideration. (sic)

> In situations such as this one where dismissal is based on a "mixed motive" the court must expressly find that "but for" the constitutionally protected conduct plaintiffs would not have been discharged. (Citations omitted) Plaintiffs have failed to meet their burden.

In support of their claim to political discrimination plaintiffs merely state that the practice of political discrimination by the PPD administration is well known. Such a general statement is completely inadequate to support their claim. Once the party moving for summary judgment has come forward with a valid argument the opposing party may not rest on mere conclusory statements but must put forth specific facts to refute the argument. (Citations omitted) Here, defendant claims plaintiffs were discharged because they had been hired in violation of PRTC Regulations. Plaintiffs have come forward with nothing more than conclusory statements that the real reason for discharge was political affiliation. No specific evidence of any kind was proffered to rebutt defendants' claim.

We find, therefore that plaintiffs have failed to present sufficient evidence to raise a question of fact that "but for" political affiliation they would not have been dismissed from their positions. Defendants' motion for summary judgment against all plaintiff, except Annie Ceide, is GRANTED.[4]

We respectfully disagree with the *Kauffman's* court use of the "but for" analysis. We believe such analysis is inappropriate in a case where plaintiffs who claim political discrimination were illegally hired. In the present case, we believe that even if plaintiffs would not have been fired but for their political affiliation with the NPP, there is an overriding government interest of vital importance to justify its conduct.[5] *See, Elrod v. Burns*, 427 U.S. 347, 362–368, 96 S.Ct. 2673, 2684–2687, 49 L.Ed.2d 547 (1976).

The creation and afterward extension of the transitory positions of Executive Director I held by plaintiffs were made in

---

4. Annie Ceide was hired before the effective date of the PRTC's personnel regulations. As a result, she was not illegally hired and that part of the Court's opinion was inapplicable to her.

5. The "but for" analysis expounded by the Court in *Kauffman* could be converted into a political straight jacket for future administrations. It is conceivable in these times of hotly contested elections and of a highly charged political atmosphere that permeates government service in Puerto Rico that any given administration could pad the lists of public employees with illegally hired persons (of its own political ideology) only to have these same persons frustrate the development of a legitimate public policy of a new administration by claiming that their dismissals were "but for" political reasons.

violation of the norms of creation, classification and compensation provided by the Public Service Personnel Act, *supra;* the Budget Act, *supra;* and the Uniform Compensation Act, *supra.* The classification of positions is one of the essential areas of the merit principle embodied in the Public Service Personnel Act. 3 L.P.R.A. § 1331. The merit principle seeks that the fittest serve the government and that every employee be selected, trained, promoted and retained in his employment in consideration of his merit and ability. *See,* 3 L.P.R.A. § 1331. It is also the goal of the Commonwealth of Puerto Rico through the application of this principle to attain the highest levels of excellence, efficiency and productivity in the public service by achieving the following objectives:

   1) To attain that the public administration be governed by criteria of the utmost uniformity, equity and justice.

   2) To maintain a climate of harmony and satisfaction in the work, that may redound in a high degree of motivation and spirit of service among the employees.

   3) To maintain the continuity and regularity in the rendering of public services.

   4) To attain as a maximum aspiration the rendering of public services that may tend to attain and assure the continuous socioeconomic development of Puerto Rico, the highest degree of social justice and the full enjoyment of the rights consecrated in the Bill of Rights of our Constitution.

   5) To assure that the government has adequate means, through the use and restricted use of the confidential service, to implement the public policy validated by the majority at the same time that the career service is protected as a basic institution of the public service.

   6) To offer to the employee mechanisms of participation that may tend to attain a climate of harmony and efficiency.

3 L.P.R.A. § 1312.

   In the present case, to order the reinstatement of employees who were illegally hired, that is, whose positions were created in violation of the norms of creation, classification and compensation provided by the Public Service Personnel Act (hereinafter the Act), would go against the merit system and its goals of efficiency, excellence, productivity, uniformity, harmony, satisfaction in the work place, motivation and spirit of service, regularity, etc., mentioned in the Act. These government interests outweigh any possible loss of plaintiffs' constitutional rights, and by not ordering their reinstatement these interests are furthered in the least restrictive manner. We, therefore, believe that in the present case plaintiffs forfeited their right to claim protection from the First Amendment when they were illegally hired.[6]

   Having found no violation of plaintiffs' federal constitutional rights, there is no need to address the qualified defense. We are left, however, with plaintiffs' claims under the laws and Constitution of the Commonwealth of Puerto Rico. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that a federal court has pendent jurisdiction whenever the state and federal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. at 1138. The Court in *Gibbs* recognized, however, "that pendent jurisdiction is a doctrine of discretion, not of plaintiff's rights." *Id.* at 726, 86 S.Ct. at 1139. The court also recognized that if "the federal claims were dismissed before

---

**6.** We recognize that the Supreme Court of Puerto Rico in *Guerra v. Servicios Sociales,* 113 D.P.R. 50 (1982), stated that:

The merit system [of Puerto Rico's Public Service Personnel Act] is an integrated system which covers the discharge of the employee and also his or her recruitment, therefore, if the employee entered the public service without complying with the requirements of the

merit system he or she cannot later claim protection of the system if discharged, except if the discharge is because of political discrimination.

We note, however, that in *Guerra* the Supreme Court of Puerto Rico is interpreting Puerto Rico's constitutional law and not federal constitutional law as in the present case.

trial, the state claims should be dismissed as well". *Id.*

Having dismissed the federal claims, we find it appropriate to dismiss the pendent claims as well.

WHEREFORE, in view of the applicable law and jurisprudence, defendants' motion for summary judgment is hereby GRANT-ED, and therefore, the complaint is hereby DISMISSED.

IT IS SO ORDERED.