**Manuel ARBONA CUSTODIO, et al., Plaintiffs,**

**v.**

**Francisco de JESUS GOTAY, et al., Defendants.**

**Civ. No. 86–0042(PG).**

United States District Court, D. Puerto Rico.

Jan. 25, 1988.

Frank Rodriguez Garcia, Ponce, Puerto Rico, for plaintiffs.

Jaime Brugueras, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is an action for damages and injunctive relief, brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, by plaintiffs Manuel Arbona Custodio (Arbona) and Luis Raúl Velázquez (Velázquez), who allege that they were demoted from their positions as Deputy Vice–Presidents in the Agricultural Credit Corporation to the positions of Specialist in Agricultural Credit I and II, respectively, solely due to their political affiliation to the New Progressive Party (NPP). Defendant is Francisco de Jesús Gotay, sued in his personal and official capacity as President of the Agricultural Credit Corporation (ACC).

Following a bench trial held from November 17 to 23, 1987, and after careful consideration of the testimonies, the contents of the documents introduced as evidence and having considered the demeanor and credibility of each witness, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Plaintiff Arbona began his career with ACC on December 1977 and became a permanent employee as a Specialist in Agricultural Credit I. On November 13, 1979, the then President of ACC appointed him to the position of Chief Agronomist in Agricultural Credit, Utuado Region, which position he held until September 30, 1985, when he was demoted back to the position of Specialist in Agricultural Credit I by defendant de Jesús.

2. Plaintiff Velázquez began his career with ACC on January 1965. Velázquez held the position of Specialist in Agri-cultural Credit II until February 1978, when he was appointed by the then President of ACC to the position of Chief Agronomist in Agricultural Credit, effective March 1, 1978. He held the position of Chief Agronomist in Agricultural Credit[1] until his demotion to the position of Specialist in Agricultural Credit II, made by defendant de Jesús by letter dated November 1, 1985.

3. The position of Specialist in Agricultural Credit is a career position in ACC covered by the collective bargaining agreement applicable to the appropriate unit of non-managerial employees. On the other hand, the position of Deputy Vice–President is as "career" managerial position, defined by the corporation's plan for classification and retribution, in force since July 1974, subsequently amended in 1981. Appointments to the Deputy Vice–President positions are subject to the corporation's Personnel Manual, effective since November 24, 1976.

4. Plaintiffs Arbona and Velázquez are members of the NPP. Defendant Francisco de Jesús is the President and General Manager of ACC. He was appointed by the Secretary of Agriculture, who in turn was appointed by the present Governor of Puerto Rico. Defendant is a member of the Popular Democratic Party (PPD), the governing party of Puerto Rico at the moment.

5. By letters dated September 27 and November 1, 1985, defendant de Jesús removed and demoted plaintiffs Arbona and Velázquez from the positions they held as Deputy Vice–Presidents and reappointed them, respectively, to the positions of Specialist in Agricultural Credit I and II, which career positions were held by them prior to becoming Deputy Vice–Presidents.

6. Shortly after taking office on January 1985 defendant de Jesús was notified with copy of two preliminary audit reports, one prepared by the office of the Comptrol-

---

**1.** The name by which the position held by plaintiffs was known evolved through the years from Agricultural Credit Manager to Chief Agronomist in Agricultural Credit to Deputy Vice–President, its present denomination. Despite the change in name, the nature of the work, knowledge, abilities and skills needed, as well as the requirements to fill the position, basically remained unchanged from July 1974 to the present.

ler of Puerto Rico and the other by the Auditors Office of the Department of Agriculture. These reports were the result of two independent audits performed by these two agencies on ACC affairs from approximately August 1981 to the end of the year 1984 and which audits covered the period from approximately April 1979 to August 1982. Both audits investigated, among other areas, the Personnel Office of ACC, and both preliminary reports made findings of illegal appointments in the corporation made within the period investigated.

7. Upon being advised of the contents of the reports by the Office of the Comptroller and the Auditor of the Department of Agriculture, defendant de Jesús instituted a panel of three ACC employees[2] and ordered them to conduct a complete study of the personnel area. This study included a detailed analysis of the nominating process and appointments for each and every employee occupying managerial positions within ACC.[3]

8. As a result of the study performed by the committee, defendant de Jesús found that the career managerial appointments made to plaintiffs Arbona and Velázquez were illegal and made without complying with the announcement, competition and evaluation requirements described in Article VII of the Corporation's Personnel Manual. Furthermore, their "promotions" from an appropriate unit position to a managerial position, without opposition, did not comply with the requirements established by Article VIII, Section 1(c) of the Personnel Manual.

9. On July 18, 1985, defendant de Jesús met with plaintiff Arbona and advised him of his illegal appointment, offering him the opportunity to come forth with evidence of any kind to controvert said finding. At the meeting with defendant de Jesús, or thereafter, Arbona did not produce or offer any evidence that would prove de Jesús wrong. As a result, he was demoted effective October 1, 1985.

10. On September 27, 1985, defendant de Jesús wrote a letter to plaintiff Velázquez informing him that as a result of an investigation carried out, it was found that his appointment as a Deputy Vice–President was not made pursuant to the law and the Personnel Regulations of the corporation. He was then notified of the intention to reinstate him to the position of Specialist in Agricultural Credit II. He was advised of his right to request a hearing prior to his termination and to submit evidence to establish the legality of his appointment. After several continuances, a hearing was held on October 30, 1985, where Velázquez failed to produce or offer any evidence in his favor. He was reinstated to the position of Specialist in Agricultural Credit II, effective November 6, 1985.

11. ACC has an Appeals Board empowered to hear grievances concerning demotions or separation from employment. Niether plaintiff made use of the remedies of the Appeals Board.

12. The Court finds that the appointments conferred to plaintiffs Arbona and Velázquez, as Chief Agronomists in Agricultural Credit, did not comply with the applicable sections of ACC's Personnel Manual and, thus, were illegal. It was established during trial that the nominating authority failed to announce the availability of the positions and that no other employees were given the opportunity to qualify for said positions, contrary to the merit system established by the Personnel Manual.

13. The Court finds that defendant Francisco de Jesús did not politically discriminate against plaintiffs or any other employee of ACC. The criteria considered when reappointing them to their last legally held positions strictly followed defendant de Jesús' duties and obligations as President of ACC to, among other things, comply with the dispositions of the law and the

---

2. Said panel was composed by the head of the Personnel Office, the Comptroller and the head of the Legal Division.

3. This analysis and study was not necessary or appropriate for the other employees of ACC since their labor relations with the corporation was governed by the collective bargaining agreement in force.

Personnel Manual, upholding the merit system established therein. The criteria utilized by defendant de Jesús had its origin in two audit reports from different sources, was adopted after a thorough study by ACC of its Personnel Area, and was applied evenly to other persons similarly situated.

### Conclusions of Law

In their complaint, plaintiffs allege violations of their first amendment and due process rights under the First and Fourteenth Amendments to the Constitution of the United States.

Defendant on the other hand, denied plaintiffs' claims. With respect to the due process claim, defendant contends that plaintiffs do not enjoy a property right to their positions under the laws of Puerto Rico because plaintiffs' appointments to these positions were contrary to law and regulations and thus null and void *ab initio*. In addition, defendant contended that plaintiffs were afforded their due process constitutional rights, including a pretermination hearing, although none was required to be given as a matter of law in the absence of a property right. With respect to plaintiffs' first amendment claim, defendant contends that plaintiffs were reassigned because of their unlawful appointment and not because of their political affiliation. We examine the due process and first amendment claim *seriatim*.

### A. The Due Process Claim

The Due Process Clause of the Fifth and Fourteenth Amendments guarantees that no person shall be deprived of a property interest without due process of law. Plaintiffs' contention that they were denied the procedural due process guaranteed by the Federal Constitution depends, in the first instance, on whether or not they had a property interest in the position of Deputy Vice–President recognized by state law. If plaintiffs hold a property interest under state law, then they could not be discharged without the procedural safeguards which the Federal Constitution requires, including a pretermination hearing. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

After a review of the evidence, this Court finds that plaintiffs did not enjoy a property interest recognized under state law in the position of Deputy Vice–President of ACC.

ACC, as an instrumentality, is specifically excluded from the Public Service Personnel Act of the Commonwealth of Puerto Rico, Art. No. 5 of 1975, in its section 10.6., 3 L.P.R.A. § 1338, and its employees are covered in matters of personnel by its Personnel Regulations of November 24, 1976 (Statement of Uncontroverted Facts, paragraph 8).

The positions held by plaintiffs in this case, Chief Agronomist in Agricultural Credit, are "career" positions as defined by ACC's Personnel Manual, Article V. Career employees may be removed only upon a showing of "just cause", and after being given notice and hearing (ACC's Personnel Manual, Article IV). Employees with a similar statutory protection have been held to have an expectancy in continued employment and a property interest in the employment position. *See Loudermill, supra,* 105 S.Ct. at 1491; *Kercado–Melendez v. Aponte–Roque,* 641 F.Supp. 1326 (D.P.R. 1986).

During the proceedings, however, defendants submitted that plaintiffs' appointments to the position of Chief Agronomists in Agricultural Credit were illegal since they were made in violation of the norms, classifications and requirements provided for by ACC's Personnel Manual and Classification and Retribution Plan. We agree.

The appointment of plaintiffs to career managerial positions within ACC were illegal since they were made in violation of the merit system provided by the Personnel Manual in force at the time they were made. In *Guerra v. Servicios Sociales,* 113 D.P.R. 50 (1982), the Supreme Court of Puerto Rico stated:

The merit system is an integrated system which covers the discharge of the employee and also his or her recruitment,

therefore if the employee entered the public service without complying with the requirements of the merit system, he or she cannot later claim protection of the system if discharged, *except if the discharge is because of political discrimination. Guerra, supra,* at 53; also see *Accardi v. Schaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Mass. Fair Share v. Law Enforcement Assistance,* 758 F.2d 708 (D.C.Cir.1985). (Emphasis supplied)

It is an undisputed fact that plaintiffs were appointed to their positions as Chief Agronomists in Agricultural Credit without affording other employees with similar or better qualifications any consideration for the positions available and without advertising the position openings in any manner, as required by Article VII, Section 2 of the Personnel Manual. Plaintiffs themselves admitted as much.

In an attempt to refute defendant's claim, plaintiffs argued that they were legally hired. Their argument was based in an exception to the promotion system contained in Article VIII, section 1(c) of the Personnel Manual, which provides for promotions without opposition, which states:

> The corporation may authorize the promotion of employees through individual examinations when *the exceptional and special requirements of the service and the special qualifications of the employees so justify it.* Exceptional and special requirements should be understood to mean that there is no adequate registry of eligibles, that one cannot be established within a reasonable amount of time and that the need to cover the position cannot be delayed, *or that a reasonable certainty exists that there is only one available candidate that meets the special qualifications for the position.* Special qualifications of the employees should be understood to mean those directly related to the functions of the position, that would qualify them to achieve a promotion through the ordinary procedure. (Emphasis supplied)

Even if we were to accept plaintiffs' interpretation of the regulation, there is no evidence in record that exceptional or special requirements of the service justified the appointments. Moreover, the evidence showed that there were other eligible candidates for the positions working within ACC when the appointments were made and that these candidates were not given the opportunity to compete for the positions.

In plain language, the regulations require that the nominating authority publish the available positions and that they be open to competition among the aspiring candidates. As an exception, and only if there are no available candidates within the agency, can the President appoint an employee without complying with the recruitment norms established by the regulations. This was not the factual reality in this case.

Under these circumstances it cannot be said that plaintiffs enjoy a property interest to Deputy Vice-President positions pursuant to state law. Article 4 of the Puerto Rico Civil Code establishes that acts executed contrary to law are null and void *ab initio.* 31 L.P.R.A. § 4 (1902). The rationale of said provision is that unlawfulness does not engender enforceable rights. There is ample authority under Article 4 provided by the Supreme Court of Puerto Rico declaring null and void a myriad of commercial contracts and public employment conditions achieved in a manner contrary to law. *Tomasini v. Town of Ponce,* 50 P.R.R. 766 (1936); *Commonwealth of Puerto Rico v. Rivera,* 88 P.R.R. 191 (1963); *De Jesús Guerra v. Guerra,* 105 D.P.R. 207 (1976); *Ortiz v. Mayor of Aguadilla,* 107 D.P.R. 819 (1978); *Del Rey v. Construction and Lotification Appeals Board,* 107 D.P.R. 348 (1978); *Delgado Rivera v. Mayor of Carolina,* 109 D.P.R. 3 (1979); *Colón v. Municipality of Ceiba,* 112 D.P.R. 740 (1982); *Franco v. Municipality of Cidra,* 113 D.P.R. 260 (1982); *Guerra v. Servicios Sociales,* 113 D.P.R. 50 (1982). These cases indicate that an appointment to public employment effectuated contrary to the pertinent legal and regulatory disposition does not breed a property right in said position.

Because plaintiffs were hired in violation of ACC's Personnel Regulations, they have no property interest in their employment and no right to due process prior to termination.

█ I any event, even if a property right were present, we find that both the pre-termination opportunity afforded to plaintiffs and the due process post-termination process provided by regulation are constitutionally firm.[4]

### B. *The First Amendment Claim*

█ In *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court adopted a two-pronged test for establishing a claim of constitutionally prohibited discrimination. Plaintiffs must first show, by a preponderance of evidence, that their conduct was constitutionally protected and that this conduct was a substantial or motivating factor in defendant's decision to demote them. This showing that party affiliation was a substantial factor in defendant's decision is a "threshold showing", the absence of which ends the constitutional inquiry. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270–271, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977). If plaintiffs meet the threshold showing, then defendant must show that they would have reached the same decision notwithstanding plaintiffs' party affiliation, that is, that plaintiffs would not have been reassigned "but for" their political affiliation.

This Court finds that plaintiffs have not met the threshold showing in this case.

While it is undisputed that plaintiffs and defendant belong to different political parties, plaintiffs did not adduce sufficient evidence to show that their political affiliation was a substantial factor in defendant's decision to remove them from the Deputy Vice–President positions.

It is noted, first of all, that the irregularities in ACC's appointment process were first identified by two audit investigations, one by the Department of Agriculture and the other by the Office of the Comptroller, initiated and completed during the past administration, prior to defendant's appointment as President of ACC. Secondly, upon his appointment as President of ACC defendant ordered an independent committee to engage in a thorough study of all managerial appointments at ACC. There is no evidence that this committee singled out plaintiffs or other NPP members unlawfully appointed. Third, the evidence shows that plaintiffs were reassigned to their last previous lawful appointments together with other managerial personnel similarly situated and that these reassignments cut across party lines. Finally, it is noted that the defendant ensured that all personnel appointments be made in conformity with law and regulation and that plaintiffs, although not chosen, competed an equal footing with other competent and qualified candidates for the positions left vacant.

When hiring and appointing the persons who filled the positions left vacant by plaintiffs, defendant strictly followed the regulations and his criteria was their experience, education and seniority. This was the "neutral" or non-political factor utilized

---

**4.** Arbona was appraised by de Jesús in the meeting held on July 18, 1985, of his intention to terminate his employment unless Arbona came with some evidence to demonstrate that his appointment was legal. After Arbona failed to answer the charges, or produce any evidence, more than two and a half months passed until he was permanently removed from the position he held. Plaintiff Velázquez was afforded an informal hearing where he failed to produce any evidence that proved his appointment illegal. Pursuant to *Loudermill,* a pretermination hearing need not definitely resolve the propriety of a discharge. It should be an initial check against a mistaken decision—essentially, a determination of whether there are reasonable

grounds to believe that the charges against the employees are true and support the proposed action. The affected employee is only entitled to an opportunity to present reasons as to why the proposed action is mistaken or should not be taken. *Loudermill,* 105 S.Ct. at 1493. In this case, it is evident that plaintiffs did not assist themselves of said opportunity. Furthermore, the post-termination proceedings afforded by ACC's Appeals Board Regulations also satisfy the constitutional due process standard. We reject defendant's contention, however, that plaintiffs had to exhaust this appeal mechanism before filing their section 1983 suit. *Kercado–Melendez v. Aponte Roque,* 829 F.2d 255 (1st Cir.1987), *reh. denied,* Slip Op. Nov. 18, 1987.

**46**

for plaintiffs' reassignment. *Mt. Healthy City School District School District v. Doyle, supra; Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

We conclude, therefore, that defendant did not discriminate against plaintiffs.[5]

Based on the foregoing, the complaint is DISMISSED and judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**5.** In the present case, even if we had found that plaintiffs had been discriminated against by defendant de Jesús, we believe that they had forfeited their right to claim protection from the First Amendment when they were illegally promoted to the position of Chief Agronomist in Agricultural Credit. Our position, as established in *Rojas v. Aponte Roque, infra,* is that the Government's interest in promoting the merit principle provided by the Public Personnel Act and ACC's regulations far outweighs any possible loss of plaintiffs' constitutional rights. Since no discrimination was found on this case, however, it is not necessary to enter at length on this issue. *María Rojas v. Awilda Aponte Roque,* 678 F.Supp. 23 (D.P.R. 1987) (Pérez–Giménez, J.).